*Nov. Term,*
*1858.*

THE MADISON, &c.,
RAILRO'D Co.
*v.*
WHITESEL.

---

THE MADISON, INDIANAPOLIS, AND PERU RAILROAD COMPANY *v.* WHITESEL.

The provision of the statute that when a deposition is to be taken out of the state, the clerk shall, at the request of the party who designs taking it, issue a commission to the officer designated, &c., is imperative; and without such commission the non-resident officer has no authority to take the deposition.

A deposition taken out of the state should be suppressed, if the notary, in his certificate, omit to say whether or not the adverse party was present at the taking.

The non-production in evidence, on notice, of the books of a corporation, will not justify the admission of parol evidence of the fact sought to be proved by the books.

As a general rule, an action, against a carrier, for the loss of goods sent by a vendor to a vendee, must be brought in the name of the consignee; for the law infers that, by the delivery to the carrier, the goods become the property of the consignee, and this though the consignor pay the freight; but where, by agreement between the vendor and vendee, the goods did not become the property of the latter, and he was at no risk in regard to them until they actually reached him, the consignor should sue.

APPEAL from the *Tipton* Court of Common Pleas.

DAVISON, J.—The complaint alleges that *Whitesel*, who was the plaintiff, on the 10th of *January*, 1854, at *Tipton*, delivered to the *Peru and Indianapolis Railroad Company* seventeen pair of deer hams, three whole deer, sixty-five rabbits, and five dozen squirrels, all in good order, and, in

*Monday,*
*November 22..*

Nov. Term,
1858.

THE MADI-
SON, &c.,
RAILRO'D CO.
v.
WHITESEL.

the aggregate, worth 100 dollars, which that company, for the consideration of 10 dollars, promised to convey to, and deliver at, the regular station in *Cincinnati, Ohio*, for *Rhodenstein & Co.*, in as good order as they were when received, and without any unnecessary delay. Plaintiff avers that afterwards, and before the commencement of this suit, the *Peru and Indianapolis Railroad Company* and the *Madison and Indianapolis Railroad Company* became consolidated into one company, under the corporate name of the *Madison, Indianapolis, and Peru Railroad Company*, by means of which consolidation the last-named company, who were the defendants below, became responsible for the payment of all the debts of the *Peru and Indianapolis Railroad Company*. And further, it is averred that the aforesaid property was not conveyed to and delivered at the regular station at *Cincinnati*, according to contract, &c.

The defendants answered by a special denial. The issues were submitted to the Court, who found for the plaintiff, and over a motion for a new trial there was judgment, &c.

The defendants, at the proper time, moved to suppress a deposition taken before *Conklin*, a notary, at his office in *Cincinnati, Ohio*. The deposition purports to have been taken pursuant to notice; but no commission was issued to the officer before whom it was taken. The motion was overruled, and it was read in evidence.

We have a statute which says that where a deposition is to be taken out of the state, the clerk shall, at the request of the party who designs taking it, issue a commission to the officer designated, &c. 2 R. S. p. 87, § 260. This rule of practice seems to be imperative. The commission to the non-resident officer is a statutory requirement, and without it, he has no authority to take the deposition. But there is another reason why the motion to suppress should have been sustained. The notary, in his certificate, omits to say whether or not the adverse party attended. *Id.* § 257.

During the trial, the plaintiff produced one *Newton J. Jackson*, and by him offered to prove the consolidation as

Nov. Term,
1858.

The Madi-
son, &c.,
Railro'd Co.
v.
Whitesel.

alleged in the complaint; and that the defendants thereby became liable for the debts of the *Peru and Indianapolis Railroad Company*; it being first proved that due notice had been served on the defendants' attorney to produce the books containing such act of consolidation. The parol evidence thus offered, though resisted by the defendants, was admitted by the Court.

No doubt the company's record book, had it been produced, would have been received as the best evidence; but the point of inquiry is, was she bound to produce it? The code provides that "the acts and proceedings of corporations may be proved by a sworn copy of the record of such acts and proceedings: the oath shall be made by the person having the legal custody, and shall state that such transcript is a true and full copy of the original," &c. *Id.* p. 93, § 284. The reason for this enactment may be found in the inconvenience that would result from the removal of such records, especially if they were wanted in two or more places at the same time. Their non-production, in this instance, was, in our opinion, insufficient to authorize the parol evidence.

Again, the plaintiff, on the trial, offered in evidence a bill of lading which purports to embrace the property described in the complaint, was executed by an agent of the company, and is, in effect, as follows:

" *Tipton, January* 10th, 1854. Received of *David Whitesel*, in apparent good order, to be transported on the *Peru and Indianapolis Railroad*, the under-named articles, marked, &c., which we promise to deliver without unnecessary delay, in like good order, subject. to the agreement now made and hereinafter expressed, for *Rhodenstein & Co.*, at the regular station in *Cincinnati*, on payment of freight as per tariff of said company, and the presentation of this receipt," &c.

The Court, over the defendants' objection, admitted the evidence. Still its admission cannot be assigned for error; because the grounds of objection do not appear to have been pointed out in the Common Pleas. But the appellant insists that the evidence thus admitted at once shows

Nov. Term,
1858.

THE MADI-
SON, &c.,
RAILRO'D CO.
v.
WHITESEL.

that *Whitesel* has no right of action; that the consignees named in the contract are the real party in interest; and that they alone are entitled to sue for the alleged breach. As a general rule, the action against a carrier for the loss of goods sent by a vendor to a vendee, must be instituted in the name of the consignee; because the law implies that, by the delivery to the carrier, the goods became the property of the consignee, and this obtains though the consignor has paid the carrier for the conveyance of the goods. Where, however, by agreement between the vendor and vendee, the goods did not become the property of the latter, and he was not at any risk in regard to them until they actually reached him, the consignor should be the plaintiff. 1 Chit. Pl. p. 6.— *Green* v. *Clarke*, 2 Kernan, 343. — *Griffith* v. *Ingledew*, 6 Serg. and Rawle, 442.— *Bonner* v. *Marsh*, 10 S. and M. 376.—Angell on Carriers, § 497, *et seq.*— *Everett* v. *Taltus*, 15 Wend. 474. In the record before us, it is not shown, either by averment or proof, that the goods remained the property of the consignor. The defendants promised to deliver them for *Rhodenstein & Co.*, at the regular station in *Cincinnati*, on payment of freight, &c. Hence, it must be assumed that the property in the goods vested in the consignees upon their delivery to the carriers; and that, for safe carriage, the contract is between the defendants and the consignees, who are, consequently, the real party in interest. 2 R. S. p. 27, § 3.

As the case stands upon the record, the plaintiff, in our opinion, has no right of action; and the judgment must, therefore, be reversed.

*Per Curiam.* — The judgment is reversed with costs. Cause remanded, &c.

*J. Green*, for the appellants.

*W. Garver* and *J. A. Lewis*, for the appellee.