King *v.* The Enterprise Insurance Co.

---

KING *v.* THE ENTERPRISE INSURANCE COMPANY.

PLEADING.—*Instrument Required to be in Writing.*—If a pleading is based upon an instrument required to be in writing, it will be subject to demurrer, unless the original or a copy is filed with the pleading.

SAME.— *Written Instrument.*—If a pleading alleges a contract sued on to be in writing, it will be bad on demurrer, unless the original or a copy is filed with the pleading.

SAME.—Under the code, if a contract sued on is not alleged to be in writing, and no copy is filed with the pleading, the presumption arises that the contract is not a written one, and if the contract is such as is required to be in writing, the objection may be taken by demurrer.

SAME.—*Practice.*—*Motion to have Pleading Made More Specific.*—Where a steamboat is insured while running between certain points, and afterward, for an additional premium, the terms of the policy are extended so as to extend the risk while running between other points, the cancellation of the latter agreement need not be in writing; and a motion to have an answer setting up such cancellation and release, in bar of a suit on the policy, made more specific by stating whether the release was in writing or not, where it is not alleged in the motion that it was in writing, and the motion is not supported by affidavit showing it to have been in writing, should be overruled.

SAME.—*Evidence Struck Out of Pleading.*—A party is required to plead facts, and not evidence, and where a pleading contains the evidence tending to prove the substantial averments of the pleading, a motion to strike out the evidence should be sustained.

SAME.—*Redundant Averment Struck Out.*—Redundant averments, unnecessary exhibits, and useless verbiage in a pleading, are not reached by a demurrer, but should be struck out on motion.

SAME.—*Implication.*—An allegation that a contract was cancelled implies that it was cancelled with the knowledge and consent of the parties.

EVIDENCE.—*Insurance Policy.*—*Custom or Usage.*—In a suit upon a policy of insurance to recover for a loss, where there is no question as to the rates of insurance charged and paid by the insured, evidence of the custom or usage of insurance companies as to the rates is immaterial.

SAME.—*Parol Evidence.*—Parol evidence cannot be received to contradict or vary the express terms of a policy of insurance.

PLEADING.—*Reformation of Written Contract.*—The terms of a written instrument sued on cannot be reformed or changed on the ground of mistake, at the instance of the defendant, except by alleging the mistake and asking affirmative relief by a cross bill.

EVIDENCE.—*Examination of Witness.*—*Leading Question.*—If a question is necessarily leading, it is not objectionable on that account.

SAME.—*Entries in Books of Corporations.*—Entries in the books of a corporation of the acts and proceedings of the corporation cannot be admitted in evidence on behalf of the corporation by simply attaching them to a deposition and making them a part thereof. Such entries must.be authenticated as required by section 284 of the code.

SAME.—An entry upon the books of an insurance company, noting the rescission and cancellation of a policy of insurance, made without the knowledge or consent of the insured, will not bind the insured; nor will such entry be admissible as evidence of a rescission or cancellation of the policy.

SAME.—*Copy of Instrument.*—In a suit upon a policy of insurance, where the plaintiff had read in evidence the original policy, and it was not disputed that it was the true and genuine policy, it was error to permit to be read in evidence on behalf of the insurance company what was said to be a copy, but which was never signed or issued, and which contained entries which were not in the original.

SAME.—The force and effect of a written instrument cannot be explained away or destroyed by evidence as to what it was called.

SAME.—*Effect of Incompetent Evidence.*—Where incompetent and inadmissible evidence has been received, the presumption is, that it influenced the mind of the court trying the cause, and unless it clearly appears that it did not, the judgment must be reversed.

From the Floyd Circuit Court.

*G. V. Howk, W. W. Tuley,* and *J. H. Stotsenburg,* for appellant.

*J. S. Davis,* *C. Baker,* *O. B. Hord,* and *A. W. Hendricks,* for appellee.

BUSKIRK, J.—Hicks King, the appellant, owned an inter-est in the steamboat Empire, valued, by agreement with the appellee, at the sum of seven thousand five hundred dol-lars.

On January 24th, 1868, the appellee by her policy, num-ber 623, insured the said interest in the Empire to the amount of five thousand six hundred and twenty-five dollars, at the rate of twelve per cent., against perils of the seas, rivers, etc., from January 24th, 1868, to January 24th, 1869, "with permission to navigate the Ohio river and tributaries, except the Wabash, and the Mississippi river between Cairo, Ill., and Memphis, Tenn."

Afterward, on April 16th, 1868, the appellee issued and delivered to King the following extra or additional privilege:

" Enterprise Insurance Company, Capital $1,000,000.

" CINCINNATI, April 16th, 1868.

End's't : Hull Policy No. 623.

Steamer Empire.

" In consideration of six per cent. additional premium, privilege is hereby granted the steamer Empire to navigate the Arkansas river and the Mississippi river, below Cairo, Illinois.

" Said policy covering the interest of Hicks King in said steamer.

" Sum insured 5,625 dollars at 6 per cent. - $337.50

[SEAL.] " H. BYRON CARTER, Ass't. Sec'y."

On December 24th, 1868, the Empire left New Orleans with a cargo of general merchandise, for Cincinnati, Ohio. She proceeded in safety until the night of December 26th, 1868, when she reached a point in the Mississippi about thirteen miles below Natchez. Here a heavy fog came on, so enveloping her that further navigation was extremely dan-gerous.

She immediately "tied up" to the Louisiana shore, to await the lifting of the fog.

But in the early part of Sunday morning, December 27th, during the prevalence of the fog, a heavy landslide suddenly occurred at the very point where the boat was lying. A large cottonwood tree was precipitated upon the boat. It tore off ten feet of the guards, crushed the boat, and went through her, causing her to sink within two hours. Every effort was made to save her, but without avail. She sank to the skylights, in water twenty-two feet deep. The loss was a total one.

A protest was properly made out as near as possible to the scene of the disaster, and a true and properly certified copy of it was tendered to the appellee.

Its officers refused to receive it, although no objection was made to its form.

At the time of the loss, King owned three-eighths of the Empire, and his loss exceeded the sum insured.

The appellant's amended complaint is in the usual and proper form of complaints upon policies. It recites clearly and fully the main facts, as above briefly described, and the policy, privilege, and protest are attached to it by copy as exhibits.

The appellee answered in four paragraphs. The first was the general denial. The third was stricken out on motion.

The second averred in substance, that the original policy only gave permission "to King to navigate the Ohio river and tributaries, except the Wabash, and to navigate the Mississippi river between Cairo, Illinois, and Memphis, Tennessee," at the rate of twelve per cent., per annum; that the Empire was accustomed to run in the Louisville and Memphis trade; that on April 15th, 1868, for an extra premium of six per cent., amounting to three hundred and thirty-seven dollars and fifty cents, the privilege was granted to King "to navigate the Arkansas river, and the Mississippi river below Cairo, Illinois." This extra privilege was granted on a separate slip furnished to King by the appellee; that on July 13th, 1868, said extra privilege was cancelled; that a note for the three hundred and thirty-seven dollars and fifty cents had been given by King to the appellee, and on it a credit was allowed by

appellee of two hundred and two dollars and fifty cents as return premium for the unexpired time; King paid appellee one hundred and thirty-five dollars cash for the earned time, and the note was surrendered to King; that the cancelling of the extra privilege left the original policy only in force, whereby the Empire was insured only between Cairo and Memphis, and that the Empire was lost below Memphis.

The fourth paragraph was as follows:

The defendant amends her answer herein, and for further and fourth plea, says the steamboat Empire was a stern wheel boat and usually ran in the Louisville and Memphis trade. The original policy gave plaintiff permission to navigate the Ohio river and tributaries, except the Wabash, and to navigate the Mississippi river between Cairo, Illinois, and Memphis, Tennessee, as will more fully appear from the policy filed with plaintiff's complaint, and which is hereby referred to and made part hereof. Long after the issuing of said policy, the plaintiff through M. A. Huston, of Louisville, Kentucky, who acted as an insurance broker in the transaction, applied to defendant for the privilege to navigate Arkansas river with the privilege of cancelling it at any time. This was done by a letter of said M. A. Huston, dated 10th of April, 1868, and addressed to W. B. Cassily, Vice President of the Enterprise Insurance Company, which letter is already on file in this case as part of W. B. Cassily's deposition marked "B," and is hereby referred to and is made part hereof, and a copy thereof, marked B—is herewith filed and made part hereof, which reads as follows:

"B–1. W. B. C."

Copy of letter. "M. A. Huston to W. B. Cassily, Kentucky, Marine and Fire Insurance Company.

"LOUISVILLE, April 10th, 1868.

" W. B. CASSILY, Vice President:

" *Dear Sir*, Captain Hicks King, whose interest in steamer Empire is insured in the Enterprise desires the annual privilege for the boat to navigate Arkansas river; privilege of cancellation at any time. Please send me per-

mit.   The interest of H. J. Reamer is insured in other com-
panies of your city.   He has not yet instructed me to obtain
same privilege.

"Respectfully yours,

"M. A. Huston."

Upon this application the defendant issued, on said 16th
day of April, 1868, to the said plaintiff, the extra privilege
which is spoken of as a written obligation in the complaint,
and which is copied in the complaint, and which copy is
hereby referred to and is made part hereof.   Said extra privi-
lege was in substance, that in consideration of six per cent.
additional premium, privilege was thereby granted by the
defendant to the steamer Empire to navigate the Arkansas
river and the Mississippi river below Cairo, Illinois, the origi-
nal policy covering the interest of Hicks King in said steamer
Empire; sum insured five thousand six hundred and twenty-
five dollars; premium, three hundred and thirty-seven dollars
and fifty cents.   For which premium of three hundred and
thirty-seven dollars and fifty cents, the said plaintiff executed
on the same day his note to the defendant, payable in six
months from date, and the said extra privilege was granted
on a separate slip of paper and was delivered to and accepted
by the plaintiff.   The privilege as asked for was called the
Arkansas privilege, but the privilege as issued contained the
permission to navigate the Mississippi also, as well as the
Arkansas, in order that the plaintiff might enjoy the full
benefit of the privilege he asked, as the boat could not enter
the Arkansas river without navigating the Mississippi below
Memphis, which latter place was as far south as she was
authorized to go by the original policy.   And afterward, on
the 13th of July, 1868, the plaintiff through the said M. A.
Huston, applied to Atwood & Nicholas, who were the local
agents of the Enterprise Insurance Company in Louisville,
Ky., to have said extra privilege cancelled.   And Atwood
& Nicholas thereupon addressed a letter on said day to W.
B. Cassily, Vice President of said company, in which,
amongst other things, they said: "The Enterprise has note

for premium for Arkansas river of Hicks King on steamer Empire; he wishes to pay up and have risk cancelled for Arkansas, please send note to us," etc., which said letter of Atwood & Nicholas is now on file in this case as exhibit "C" in W. B. Cassily's deposition, and is hereby referred to, and is made part hereof, and a copy of said letter is herewith filed, marked "C–2," and is made part hereof, and is as follows, to wit: "C–2. W. B. C.

"Copy of letter of Atwood & Nicholas to W. B. Cassily.

"Fire, Marine, and Life Insurance Agency of Atwood & Nicholas, Main street, between Third and Fourth.

"LOUISVILLE, Ky., July 13th, 1868.

"W. B. CASSILY, Esq.:

"*Dear Sir,* Woolfolk promises to pay balance of note steamer Richmond to Merchants and Manufacturers' Insurance Company this week. The Enterprise has note for Arkansas river of Hicks King on steamer Empire. He wishes to pay up and have risk cancelled for Arkansas. Please send note to us. Belle Lee people at a stand-still; will pay half or cancel to-morrow.

"Yours truly,

"ATWOOD & NICHOLAS."

"JULY 17th, 1868.

"Arkansas note sent. R."

The note referred to in said letter was the note of said plaintiff to the company above mentioned, of three hundred and thirty-seven dollars and fifty cents, which was given for the extra privilege of navigating the Arkansas and the Mississippi rivers as aforesaid; and although said letter spoke of the Arkansas river risk as the one which was desired to be cancelled, yet it was merely so called, and what was understood and meant by both parties was, that the privilege as granted should be cancelled, which, although called the Arkansas privilege, was really the privilege to navigate both the Mississippi and the Arkansas. The defendant on the 17th of July, 1868, through its secretary, W. M. Richardson,

enclosed to said Atwood & Nicholas, the said note of plaintiff for three hundred and thirty-seven dollars and fifty cents for the cancellation of said extra privilege, and the collection of the amount of premium earned on the said extra privilege, which was one hundred and thirty-five dollars, as will appear by letter of said Richardson, now on file as an exhibit in the deposition of W. M. Richardson, given in this case, and which is marked "F," and is hereby referred to and is made part hereof, and a copy of said letter is herewith filed, marked "F–3," and is made part hereof, and is as follows:

"F–3. W. B. C.

"Copy of letter of W. M. Richardson to Atwood & Nicholas.

"ENTERPRISE INSURANCE COMPANY.

"Capital         -         -         -         -         $1,000,000

"CINCINNATI, July 17th, 1868.

"Messrs. ATWOOD & NICHOLAS, Louisville, Ky.:

"*Gents*, As per your favor of the 13th, we enclose you Hicks King for steamer Empire for cancellation and collection:

Amount earned         -         -         -         -         $135.00
Amount returned                               -         -         202.50
Amount of Note         -         -         -         -         337.50

" Please collect amount earned and cancel policy and remit.

"I am truly,

(Signed.)                                      " W. M. RICHARDSON.

"'F.' W. M. RICHARDSON."

This note was handed by Atwood & Nicholas to the said M. A. Huston. It was agreed between the parties, that the said extra privilege as granted should be cancelled as of the date of the 13th of July, 1868, and that the plaintiff should pay defendant one hundred and thirty-five dollars in cash for the time he had used said extra privilege, according to the short rate principle as fixed by the policy, and that he should have a credit on his note for two hundred and two

dollars and fifty cents, as return premium for the unexpired time. The plaintiff did pay to said Huston the one hundred and thirty-five dollars cash for defendant, and he was allowed a credit on his note for two hundred and two dollars and fifty cents. The one hundred and thirty-five dollars was not paid by plaintiff until about the 1st of August, 1868, and he was allowed said credit on his note, and his note was surrendered up to him, and the said extra privilege being on a separate slip of paper, and the plaintiff not having it with him at the time, there was no written cancellation of the privilege, and the same was not surrendered up by plaintiff, but it was fully agreed that the privilege as granted should be cancelled, as of the 13th of July, 1868, and it was carried out by the payment of the one hundred and thirty-five dollars to the defendant, and the delivery of the note to plaintiff, allowing him the credit as aforesaid.

A. The substance of the original policy was entered upon the books of the company at the time it was issued, and when said extra privilege was granted to navigate the Arkansas and Mississippi rivers, on the 16th of April, 1868, the substance of said extra privilege was entered upon the books of the company, and when said extra privilege was cancelled, the substance of the cancellation was likewise entered on the books of the company, at the bottom of the privilege, thus:

"Cancelled July 13th, 1868; earned (premium) $135.00; return (premium) 202.50."

Copies of all of which entries from the books of said company are already on file in this case, as part of W. B. Carter's deposition, marked exhibit "D," and which are hereby referred to and made part hereof, and copies of which are herewith filed, marked "D-4," and are made part hereof.

"W. B. C.

"Copy exhibit D-4 of entries on Hull register or Hull book of Enterprise Insurance Company:

"Copy.                               STEAMBOAT EMPIRE.

"No. 623, prop'n.    (New form policy.)    The Enterprise

Insurance Company of Cincinnati by these presents do cause to be insured Hicks King on his interest.  Coal oil clause waived.

"$5,625  ( To navigate the Ohio river
   .12 { and tributaries (except the Wabash.)
 675.00 ( and the Mississippi river between Cairo, Ill.; and Memphis, Tenn.

"Valuation of boat, $20,000.

"Limit of boat  -    15,000.

"Privilege of Arkansas and Mississippi below Cairo, for six per cent., April 16th, 1868.  See page 72, Agency Louisville.  Atwood & Nicholas, Applicant.  Date January 24th, 1868.  Time, one year; expires January 24th, 1869.  Privilege copy 1.

"Privilege copy.  $5,625 at six per cent., $337.50.  Privilege No. 72.

"No. 623, Prop'n.                    STEAMBOAT EMPIRE.

"The Enterprise Insurance Company of Cincinnati, by these presents, does cause to be insured Hicks King on his interest; privilege granted to navigate the Arkansas river, and the Mississippi river, below Cairo, Ill.  Extra premium six per cent.

"Cancelled July 13th, 1868.    Earned,   $135.00
                               Returned,  202.50
                                         _____
                                         $337.50

"Louisville Agency.  Huston applicant.  Date, April 16th, 1868; time expires January 24th, 1869."

All of which entries were in accordance with the agreement of the parties.

B. The cancellation of said extra privilege having been made long before the destruction of the boat, left only the original policy in force, whereby the plaintiff was insured on the steamboat Empire, while she was navigating the Mississippi river, between Cairo, Illinois, and Memphis, Tennessee.

The said steamboat Empire was lost on the 27th of December, 1868, some thirteen miles below the city of Natchez, Mississippi, which was far below Memphis, Tennessee, as

King *v.* The Enterprise Insurance Co.

shown by the account of the loss and affidavit and protest, made part of plaintiff's complaint, and which are hereby referred to and made part hereof, and while she was without the limits covered by the original policy; and for her loss the defendant is in nowise responsible.

DAVIS & ATWOOD, Att'ys for Defendant.

The appellant moved the court to require the appellee to make the second paragraph of the answer more specific, by stating whether the cancellation of the special privilege was in writing or by parol. The motion was overruled, and appellant excepted, and has reserved the question by a bill of exceptions.

The appellant moved to strike out of the fourth paragraph of the answer all the matters embraced between the capital letters A and B as they appear in this opinion, but the motion was overruled, and appellant excepted and reserves the question by a bill of exceptions.

The appellant demurred separately to the second and fourth paragraphs of the answer, for the want of sufficient facts. The demurrers were overruled, and an exception taken.

The appellant replied in denial of the second and fourth paragraphs of the answer.

The cause was, by the agreement of the parties, submitted to the court for trial, and resulted in a finding for the defendant.

The appellant moved the court for a new trial, but the motion was overruled, to which an exception was taken. Final judgment was rendered on the finding.

The appellant has assigned the following errors.

1. The court erred in overruling motion to require appellee to make the second paragraph of the answer more specific.

2. The court erred in overruling the motion to strike out a part of the fourth paragraph of the answer.

3. The court erred in overruling the separate demurrers to the second and fourth paragraphs of the answer.

4. The court erred in overruling the motion for a new trial.

Did the court err in overruling the motion to require the

appellee to make the second paragraph more specific, by showing whether the release of liability on the extra policy was in writing?

If a pleading is based upon an instrument which is required to be in writing, it will be subject to demurrer, unless the original or a copy is filed with such pleading. If a pleading alleges a contract to be in writing, it will be bad on demurrer, unless the original or a copy is filed and made a part of such pleading.

But under our code, if a contract is not alleged to be in writing, and no copy is filed with the complaint or answer, the presumption arises that the contract declared on is not a written one, and if the contract is such as is required by the statute of frauds to be in writing, the objection may be taken by demurrer. *Harper* v. *Miller*, 27 Ind. 277.

In the present case the cancellation of the Arkansas policy was not required to be in writing. The answer did not allege that it was in writing. No copy was filed with the answer. The presumption was, that it was not in writing. It was not alleged in the motion that it was in writing, nor was the motion supported by affidavits showing that it was in writing. Under these circumstances, we think the court committed no error in overruling the motion.

We next inquire whether the court erred in overruling the motion to strike out a part of the fourth paragraph of the answer. We entertain no doubt that the motion should have been sustained. The real defence attempted to be set up in that paragraph was, that the policy on which the action was based had been cancelled, and the company released from liability. If the cancellation had been in writing, the defence would have been founded on it, and it or a copy should have been filed with the answer. The defence was not based upon the entries in the books of the company, nor upon the other exhibits contained in such paragraph. If the motion had embraced the policy of insurance and the various letters copied into the answer, it should have been sustained. The only substantial averment in the paragraph in question was, that the policy sued on had been cancelled before the

destruction of the boat. All the other matters constituted the evidence tending to prove the cancellation. Under the code, a party is required to state facts and not plead his evidence. The practice adopted in the present case is not to be encouraged. *Vanschoiack* v. *Farrow*, 25 Ind. 310; *Lytle* v. *Lytle*, 37 Ind. 281.

We are of opinion that the court committed no error in overruling the demurrers to the second and fourth paragraphs of the answer. They were substantially good. The action was based upon the policy which insured the boat against accidents on the Arkansas river and the Mississippi river between Memphis, Tennessee, and New Orleans, in the State of Louisiana. It was alleged in the complaint that the boat was sunk on the Mississippi river, below Memphis. The defence set up in the second and fourth paragraphs was, that such policy had been cancelled before the destruction of the boat, and that, consequently, the company was released from liability. This was a defence to the action.

It is insisted by counsel for appellant that these paragraphs were bad, because it was not averred that such cancellation took place with the knowledge and consent of the appellant. There could have been no rescission or cancellation without his knowledge and consent, and we think such knowledge and consent are implied in the word "cancelled." The manner of the rescission and cancellation was matter of proof on trial.

The fourth paragraph contained many redundant averments, unnecessary exhibits, and much useless verbiage, but such defects could not be reached by a demurrer. They should have been stricken out on motion or by the court of its own motion. *Hynds* v. *Hays*, 25 Ind. 31.

We are next required to determine whether the court erred in overruling the motion for a new trial.

The appellant moved to suppress certain questions and answers in depositions of William B. Cassily and W. Byron Carter, but the motion was overruled, and an exception taken. Afterward the appellant objected, on the trial of the cause, to the reading as evidence such questions and answers.

The objection was overruled, and an exception was taken. These rulings were assigned as reasons for a new trial, and are urged in argument here. The motion was addressed to the eighth, ninth, tenth, and thirteenth questions and answers in the deposition of Cassily.

"Inter. 8. According to the custom and usage of insurance companies, was there or not any difference in the rate of premium charged for the permission to navigate the Mississippi river between Cairo, Illinois, and Memphis, Tennessee, and the Ohio river and its tributaries, except the Wabash, and that charged for the additional privilege of navigating the Arkansas river and the Mississippi river below Memphis, Tenn.? If yea, what was the additional rate? Give it by months or years and the reasons for such extra charge.

"Answer. According to the custom and usage of insurance companies, there is a difference between the rates charged for Ohio river and tributaries and for Mississippi river between Cairo and Memphis, which is from one to two per cent., according to classification of boat; also, an increased risk for the Mississippi river below Memphis, and still greater risk in the Arkansas river, for which from six to ten per cent. additional is charged, according to the classification of boats and views of different underwriters."

The question was objected to as leading, and the evidence sought to be elicited also objected to as immaterial and irrelevant.

We do not consider the question as leading, but we regard the evidence elicited by the answer as being immaterial and incompetent. If there was no difference in rates, then the appellee charged and received extra pay for an additional privilege, for which there should have been no extra charge.

If there was a difference in rates, the appellant agreed to and paid such difference. In either event, no light was thrown upon the question in issue. There was no question as to whether the appellee had charged unreasonable rates. The appellant made no objection to the rates, but paid the rates charged. Besides, the evidence as to the custom or

usage of insurance companies was incompetent under the question at issue. The custom of other companies would not be binding upon the appellee, and the custom or usage of the appellee could not change or affect the written contract of the parties. The motion should have been sustained.

" Inter. 9. Was the extra privilege referred to and the cancellation entered upon your record on the authority of those two letters B. and C.?

"Answer. Yes, sir. The privilege was asked to cover the Arkansas river. The assistant secretary, in writing the privilege mentioned the Mississippi river below Memphis, in order to give him the privilege of reaching the Arkansas. The cancellation by Atwood and Nicholas was intended to cancel the same privilege, and the return premium was made to cover the whole privilege."

The ninth question was directly leading. All of the answer except the words "Yes, sir" was not responsive to the question propounded. Besides, the balance of the answer was illegal and incompetent, as it tended to vary and contradict the express terms of the policy. The language of the policy is: "In consideration of six per cent. additional premium, privilege is hereby granted the steamer Empire to navigate the Arkansas river and the Mississippi river below Cairo, Illinois."

The privilege granted was to navigate the Arkansas river its entire length, and the Mississippi river below Cairo, Illinois. The witness says: "The privilege was asked to cover the Arkansas river. The assistant secretary, in writing the privilege, mentioned the Mississippi river below Memphis, in order to give him the privilege of reaching the Arkansas."

When a contract is reduced to writing, the legal presumption is, that the entire contract, as finally settled, is embraced therein, and all oral negotiations or stipulations between the parties which preceded or accompanied the execution thereof are to be regarded as merged in it, and it is to be treated as the exclusive medium of ascertaining the contract by which

the parties bound themselves. *Cincinnati, etc., R. R. Co.* v. *Pearce*, 28 Ind. 502.

Parol testimony can not be received to contradict or vary the terms of a written agreement. *Oiler* v. *Gard*, 23 Ind. 212.

In *La Farge* v. *Rickert*, 5 Wend. 187, it was said that "where the legal construction and effect of an instrument are well settled, it is varying the instrument to show that the parties intended something else, as much as it would be to prove that the terms used were not in accordance with the previous agreement."

The Court of Appeals of New York, by SELDEN, Judge, in the case of *Ruse* v. *The Mutual Benefit Life Insurance Company*, 23 N. Y. 516, states the whole matter clearly and succinctly:

"Nothing is better settled than that, where two parties have entered into a written contract, all previous negotiations and propositions in relation to such contract, whether parol or written, are to be regarded as merged in the final agreement. Such preliminary matter may sometimes be admissible under the rule which admits evidence of the surrounding circumstances for the purpose of explaining an ambiguous expression; but never where the terms of the contract are clear and explicit. The legal inference, in all such cases, if the contract varies from what has been previously said or written, is, that the parties, upon further consideration, have changed their views.

"Policies of insurance are no exception to this rule."

If the appellant did not apply for, and if the appellee did not intend to grant to him the privilege of navigating the Mississippi river below Memphis, but only intended to grant the appellant the privilege of navigating the Mississippi river from Memphis to the mouth of the Arkansas river, as a means of reaching the latter river, and as an incident to such privilege, then the appellee should have alleged such facts in his answer, shown how the mistake was made, and prayed for a reformation of such instrument, and when so

reformed it should be allowed as a bar to the action. This might have been done in this action, but it is well settled by repeated adjudications of this court, that the mistake must be alleged and affirmative relief asked for, as in a cross bill, that the instrument be reformed. *Rigsbee* v. *Trees*, 21 Ind. 227 ; *Rhode* v. *Green*, 26 Ind. 83 ; *Conger* v. *Parker*, 29 Ind. 380.

" Inter. 10. After the extra privilege above named was. cancelled, was it or not ever re-granted by the company?

"Answer. It was never re-granted."

The objection urged to this question was, that it was leading. We think the above question was necessarily leading, and not objectionable on that ground.

The thirteenth question to Cassily and the answer were as follows :

"Inter. 13. Am I to understand that the copy submitted will be an exact copy of the policy issued to Hicks King, if the privilege of April 16th, 1868, and cancellation of July 13th, 1868, are omitted ?

" Answer. Yes, sir."

The above question could not have been well asked in any other form, and we see no objection to it.

The motion to strike out parts of the deposition of W. Byron Carter was directed against the fifth, seventh, eighth, and ninth questions and answers, which were as follows:

" Inter. 5. Attach and make part of this deposition, marked D and your initials, true copies of the entries on the books of the company of the original insurance, privilege, and cancellation aforesaid.

"Answer. I have done so, and marked as desired, and make them a part of my deposition."

The entries referred to, marked D., embrace memoranda of the policy, of the extra privilege, and of a cancellation of the extra privilege.

We know of no rule of evidence or statute of this State, under which these copies of entries on the appellee's books were admissible in evidence on appellee's behalf. It

is true that these copies are verified by the oath of the depo-
nent, but they are not "sworn copies," within the meaning
of section 284 of our practice act, 2 G. & H. 184. For
the deponent does not state that he has the legal custody of
appellee's books; nor does he state that the copies, marked
D., are true and full copies of the original entries, nor that
such original entries have remained unaltered from their
date, to the best of deponent's knowledge and belief. These
copies, marked D., were therefore inadmissible under our
code, as evidence of appellee's acts and proceedings in rela-
tion to the matters referred to in said copies. And the court
below clearly erred in overruling appellant's motion to sup-
press the said fifth interrogatory to, and answer of, the depo-
nent, W. Byron Carter, and in admitting the said copies
marked D., as evidence in this cause. And the same remarks
will apply to all of the copies of books, which are made
parts of any of the depositions taken by appellee, and which ·
were admitted in evidence by the court below, over appel-
lant's objections and exceptions. None of these copies were
"sworn copies," within the requirements of the section
above cited of our practice act, and none of them were
legally admissible in evidence.

Section 284 is as follows:

"Sec. 284. The acts and proceedings of corporations may
be proved by a sworn copy of the record of such acts and
proceedings; the oath shall be made by the person having
the legal custody of such records and shall state that such
transcript is a true and full copy of the original, and that
such original has remained unaltered from its date, to the
best of deponent's knowledge and belief. Such sworn
copies shall be received as evidence in all cases in which the
original would be evidence."

By the above section it is provided, that such sworn copies
shall be received as evidence in all cases in which the origi-
nal would be evidence." It was not intended to exclude the
original, but the section was adopted as a matter of conven-
ience. It has been so held by this court. *The Madison, etc, R.*

King *v.* The Enterprise Insurance Co.

*R. Co.* v. *Whitesel*, 11 Ind. 55; *Green* v. *The City of Indianapolis*, 25 Ind. 490; *Weston* v. *Lumley*, 33 Ind. 486.

It was held in *Smith* v. *The Indiana, etc., R. W. Co.*, 12 Ind. 61, that a copy of the acts and proceedings of a corporation must be authenticated as required by section 284 of the code. Conceding, without deciding, that the record of a corporation might be authenticated and made a part of a deposition, the proof would have to conform to the requirements of section 284, *supra*, which was not done in the present case. It is not every entry which may be made in the books of a corporation that becomes evidence when offered by the corporation. If the entry noting the rescission of the contract and the cancellation of the extra privilege was made without the knowledge or consent of the appellant, the entry would not be binding upon him, and would not be admissible as evidence of the facts recited, but such facts might be proved otherwise. *Ex parte* entries could not become evidence for the corporation, though they might be evidence against it.

We are not prepared to say from the facts disclosed by the record, whether such entry was made under such circumstances as to make it evidence if properly authenticated.

"Inter. 7. After the said extra privilege was cancelled, was it ever or not re-granted?

"Answer. Not to my knowledge.'

Our ruling is the same as on the tenth question in deposition of Cassily.

The eighth interrogatory and the answer of Carter, which are precisely like the eighth propounded to Cassily, were objected to for similar reasons, and we need not repeat what we then said.

"Inter. 9. Where a boat is already insured with privilege to navigate the Mississippi river from Cairo to Memphis, is it or not usual to make an extra charge for permission to navigate the Mississippi river below Memphis, and if so, at what rate?

"Answer. It would be customary to make an extra charge,

as the original rate charged upon limited navigation would be predicated upon that limited navigation. The additional rate would depend upon the class of boat. If a stern wheeler probably about two per cent. additional."

The above question is in substance the same as the eighth question asked of Cassily, and for the reasons then stated, we think it should have been suppressed. The question, however, is subject to another objection. It was left to the witness to determine whether the usualness of making an extra charge refers to insurance companies generally or to the appellee in particular. Neither the question nor the answer discloses which was meant.

The court, over the objection of appellant, permitted the appellee to read in evidence what was said to be a true copy of the original policy. The appellant filed with his complaint a copy of the first policy. Upon the trial he read in evidence the original policy. There was no pretence that it was not the true and genuine policy as signed by the appellee and delivered to the appellant. We are unable to see the necessity or propriety of again reading the policy in evidence, if the one read by the appellee had been an exact copy of the original. But the one read was not a copy. It was not signed, or countersigned, or sealed by the officers of the insurance company, or by any other person. It had no more legal effect than so much blank paper. Besides, there was inserted in the body of it the following words:

" April 16th, 1868, privilege granted to navigate the Arkansas river and the Mississippi river below Cairo, Ill. Extra rate, six per cent. Additional premium, $337.50.

"July 13th, 1868. Above privilege cancelled. Return premium, $202.50. Earned, $135."

The original policy was issued, properly signed, countersigned, and sealed, and delivered to the appellant on the 24th day of January, 1868. It was, therefore, impossible that the entries made in April and July following, could have been in the original policy. Besides, the mode adopted of proving the cancellation of the extra privilege is unknown to the law.

The court also permitted the appellee to read in evidence, over the objection and exception of appellant, what was called a copy of the privilege to navigate the Arkansas river and the Mississippi river below Cairo, Illinois. The appellant had read in evidence the original. The paper read was not signed by any person, and had endorsed on it its cancellation. It is not necessary for us to add to what we have said in reference to the admission in evidence of the supposed copy of the original policy.

The witness Mac. Huston on the trial was shown the additional privilege and then was asked by the appellee to state what the paper was called. The appellant objected to the question, because the same was immaterial and irrelevant, and further, because the paper itself showed what it was.

But the court overruled the objection, over appellant's exception, and the witness answered thus:

"The Arkansas river privilege. The additional privilege to navigate the Arkansas river."

We are not aware of any principle of law or rule of practice which will justify the admission of such evidence. It was wholly immaterial what the paper or privilege was called. The question was, what privilege was granted? And this was best determined by an inspection and construction of the policy itself. There was no ambiguity, either patent or latent. The language was plain and express, and needed no interpretation. If the language employed to express the contract had been put into the policy through mistake or accident, the remedy was by a reformation of the contract. The force and effect of a written instrument can not be explained away or destroyed by evidence as to what it was called.

There was no controversy in the court below as to the granting of the extra privilege or the destruction of the boat. The real question was, whether there had been a rescission of the contract. If the insurance company surrendered to the appellant his premium note, upon an agreement that the entire privilege was to be surrendered, then the liability of the com-

pany terminated. The appellant admits that the privilege
to navigate the Arkansas river was surrendered. The appel-
lee contended that the entire privilege was surrendered, and
to establish such fact he was permitted to prove by parol
evidence that the company never intended to grant to the
appellant the privilege of navigating the Mississippi river
below the mouth of the Arkansas river, and to read in evi-
dence the entries taken from the books of the company,
showing a cancellation of the entire privilege. There is no
room to doubt, that, under the issues, such evidence was
incompetent and inadmissible. Did such incompetent evi-
dence have any influence upon the mind of the learned
and usually very accurate judge who presided at the trial of
this cause? The presumption is, that it did, and unless it
clearly appears that it did not, we must reverse the judg-
ment. In *Thompson* v. *Wilson*, 34 Ind. 94, this court quoted
with approval, the following language used in the case of
*Belden* v. *Nicolay*, 4 E. D. Smith, 14:

"But when illegal evidence is, in fact, received, and the
return states, in terms, that the finding of the court below is
upon consideration of all the evidence given upon
the subject, we are not at liberty to disregard the error.
In such case it not only appears that the improper testimony
may have influenced the court in its finding upon the facts,
but that it did so." When illegal evidence has gone to a
jury, it may be withdrawn by the court and the jury directed
to disregard such evidence. There is nothing in the record
showing that the court disregarded any of the evidence which
had been admitted. In such case, we are bound to presume
that the court took into consideration all the evidence which
had a bearing upon the issue, but such presumption would
not be indulged where wholly immaterial and irrelevant evi-
dence had been admitted. There is a direct conflict in the
evidence of Mr. Huston and the appellant upon two mate-
rial points that had an important bearing upon the determi-
nation of the cause. The improper evidence may have influ-
enced the decision of the court.

The residue of the evidence, after the improper evidence is rejected, is not so conclusively in favor of the finding of the court, that we can say that such improper evidence had no weight in the decision of the cause.

The judgment is reversed, with costs; and the cause is remanded, for a new trial in accordance with this opinion.